No. 39,740

THE STATE OF KANSAS, *Appellee*, v. PAUL G. BRENNAN, *Appellant*.

(285 P. 2d 786)

Opinion filed July 6, 1955.

R. E. Angle, of Wichita, argued the cause and T. A. Sullivan, of Wichita, was with him on the briefs for the appellant.

Tom Crossan, county attorney, argued the cause and Harold R. Fatzer, attorney general, Paul E. Wilson, assistant attorney general, Glen Tongier, deputy county attorney, and Roy Kirby, of Coffeyville, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: The defendant in this case was convicted of a violation of G. S. 1949, 21-554. He appeals.

The statute is known as the bad check statute. It makes it a crime to issue a check upon a bank without having funds in the bank to pay the check. He was charged with making, uttering and delivering to the Condon National Bank of Coffeyville a check in the amount of $1,750 without having funds on deposit with which to pay it. The information charged that he gave a check, a copy of which is as follows:

"THE CONDON NATIONAL BANK

No. _____

Coffeyville, Kansas, 3/25, 1954

Pay to the
    order of Condon National Bank.........................$1750.00
Seventeen hundred fifty ........................... .... . DOLLARS
          with exchange and collection charge
TO FIRST NATIONAL BANK
    Wichita, Kansas

Paul G. Brennan."

Across the left-hand end of this check were the words

"Brennan vs. Overton, Esc.
Customer's Draft."

At the same time he gave this check there was filed with the bank, the escrow agent, a written instrument. This referred to an understanding by which defendant was to pay one Overton for drilling an oil and gas well. The second paragraph of the contract was as follows:

"It is understood that your contract price is and shall be $2.50 per linear foot of hole cut and that this amount is escrowed in the Condon National Bank of Coffeyville, Kansas, under date of March 17, 1954, and shall be payable to you immediately upon completion of the drilling. Check in the amount of $1750.00 is placed with said escrow."

When the check was introduced in evidence stamped in three places on it were the words "Payment Stopped." Attached to it was a yellow slip marked "Returned unpaid by First National Bank in Wichita account reason checked." The statement "checked" was "Payment Stopped." Stamped across the face of the check was "Protested for non-payment, 3/31/54."

The defendant's motion for a new trial was on some eleven grounds. A motion in arrest of judgment was on the ground that

the facts as found did not constitute a public offense; the facts stated by plaintiff did not constitute a public offense and information failed to allege facts sufficient to constitute a public offense.

The specifications of error were that the court erred in admitting illegal testimony; in misdirecting the jury; refusing to fully and properly instruct the jury; in refusing to give instructions requested by defendant; the court erred in making erroneous and prejudicial rulings and orders during the trial of the case; and the court erred in depriving the defendant of a fair trial.

The defendant argues first that the court erred in admitting illegal testimony. Defendant argues that the placing of a draft with the bank to be held in escrow pending the completion of the work to be done by the complaining witness was not a delivery as contemplated by the negotiable instrument law. Some cases are cited where we have held that an escrow holder of a check given in connection with the contract or exchange of real property is not such as is contemplated in G. S. 1949, 52-901, for the purpose of canceling it.

The defendant argues that placing the draft in escrow was not placing it in circulation and the only instruction the bank had was to hold the check in escrow. This is not quite a correct statement of facts. The paragraph quoted heretofore in this opinion from the contract stated the amount was in escrow in the Condon National Bank. It is true that the same paragraph later said:

"Check in the amount of $1750.00 is placed with said escrow."

However, the check was made payable to the escrow holder and we gather from all the evidence, even that of the defendant himself, that the intention of all parties was that the money should be payable to the complaining witness when he finished drilling the well. As to whether or not the escrow holder would have been justified under the circumstances in delivering the cash to the driller of the well had the check been cashed and the money paid to him and the check cleared, we are not called on to decide that question. The only thing we are called on to decide is whether giving a check under circumstances such as this and the escrow holder placing it in circulation constituted a violation of G. S. 1949, 21-554. In this connection we have examined G. S. 1949, 52-203. Amongst other things this section provides as follows:

"An unqualified order or promise to pay is unconditional, within the meaning of this act, though coupled with: . . . (2) a statement of the transaction which gives rise to the instrument; . . ."

316

We have also held in *State v. Marshall*, 152 Kan. 607, 106 P. 2d 688:

"An understanding between the maker and payee of a no-fund check that the check is to be held and treated as a promissory note does not constitute in itself a defense in a prosecution for violation of the provisions of G. S. 1935, 21-554."

We hold the fact that this check was given to the bank in connection with the escrow instrument constituted a delivery of it within the terms of the statute.

The defendant next argues the trial court erred in misdirecting the jury in material matters of the law. The court was asked to define to the jury what constitutes a check and what constitutes delivery and that the delivery of a check to an agent of the payor did not constitute a delivery. Instead of giving these two instructions the court instructed that the instrument in question was a check within the meaning of the statute and that the giving of it to the escrow holder under the circumstances was a delivery. This was a pure question of law properly to be passed on by the court and we find that the court correctly instructed the jury in this matter.

The defendant next refers to a colloquy that occurred between the court and counsel when the court spoke sharply to counsel of a statement being made to the jury at the outset of the case during the opening statement. We have examined this language and find there was no prejudice to the rights of the defendant therefrom.

The judgment of the trial court is affirmed.